**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| TROY TAYLOR,<br><br>            Petitioner,<br><br>  v.<br><br>MARLIN GUSMAN, Sheriff of Orleans Parish,<br><br>            Respondent. | Case No. 2:20-cv-449 |

## EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

Mr. Taylor is a pretrial detainee in Orleans Parish who has been incarcerated—contrary to the Double Jeopardy Clause and the Due Process Clause (under *Blackledge v. Perry*, 417 U.S. 21 (1974))—for over 936 days. A year ago, prosecutors extended a remarkable offer: Mr. Taylor could go home immediately and receive "credit for time served," if he would simply plead guilty to one of the two charges for which he was previously tried in 2011 (and that appellate courts subsequently ruled was constitutionally barred). *See* Ex. 13. But Mr. Taylor has not accepted the plea offer because he wants to have his Due Process Clause and Double Jeopardy Clause rights vindicated. As a result, he now faces two unconstitutionally instituted charges, both of which carry a sentence of mandatory life imprisonment without parole ("LWOP").

Mr. Taylor's ordeal, which began in 2011, is lengthy and unique in Fifth Circuit history. In 2011, Mr. Taylor was convicted in Louisiana court of second-degree kidnapping and forcible rape charges stemming from an alleged 1994 incident when Mr. Taylor was eighteen years old, *see* Ex. 1. Neither the trial court, the District Attorney, nor Mr. Taylor's own lawyer listened, however, when Mr. Taylor correctly insisted that that the six-year statute of limitations for these

charges expired more than a decade earlier. It took years of *pro se* appellate and post-conviction

litigation, but eventually, Louisiana appellate courts vacated Mr. Taylor's conviction in full in

2017. *State v. Taylor*, 2017 WL 1282124, No. 2016-K-1252 (La. App. 4 Cir. 4/6/17).

      Yet thirty-three months later, Mr. Taylor remains in prison.

      In direct response to Mr. Taylor's 2017 legal victory, the same Assistant District

Attorney who prosecuted Mr. Taylor in 2011 made the decision to re-indict Mr. Taylor, based on

the exact same evidence, for "aggravated" versions of the exact same offenses (which have no

statute of limitations). *See* Ex. 5, Ex. 6, Ex. 11. As Louisiana's largest newspaper put it, Mr.

Taylor "could wind up serving life in prison for his legal victory."[1] But-for his appellate victory,

prosecutors have candidly admitted, Mr. Taylor would never face the specter of two aggravated

mandatory-LWOP charges; further, prosecutors have admitted that there is no new evidence,

new office policy, new personnel, or other changed circumstance to justify the 2017 charging

decision. The only thing that changed in the intervening six years was that Mr. Taylor

successfully asserted his constitutional rights on appeal, and Louisiana's appellate courts rejected

the District Attorney's arguments that Mr. Taylor's convictions were valid. Such "upping the

ante" after a defendant successfully vindicates his appellate rights violates the Due Process

Clause under *Blackledge v. Perry,* 417 U.S. 21 (1974).

      The instant (re)prosecution independently violates Mr. Taylor's rights under the Double

Jeopardy Clause. For the past century, the law has been crystal clear that an appellate court's

determination that an offense is time-barred operates as "a plea to the merits," and such an

---

[1]    Ken Daley, *New Indictment Raises Stakes*, TIMES-PICAYUNE, July 21, 2017, at
https://www.nola.com/news/crime_police/article_2ab5db46-1475-5442-979d-
5b3e3fd23509.html.  Mr. Daley became spokesperson for the Orleans Parish District Attorney
shortly after authoring the article.

adjudication bars retrial under the Double Jeopardy Clause. *United States v. Oppenheimer*, 242 U.S. 85 (1916) (Holmes, J.). But Mr. Taylor now improperly faces jeopardy not only for aggravated versions of the same offenses, but also for the exact same (time-barred) offenses. This is true because of an highly unusual feature of Louisiana criminal procedure: when a Louisiana defendant is tried, he is automatically placed in jeopardy for all "lesser included" versions of a particular charge, even those that are time-barred, so long as the most serious offense listed on a charging instrument is not time-barred.[2] Thus, in addition to imposing jeopardy for the "aggravated" versions of the same allegations, the tactic being employed here creates a backdoor mechanism to give prosecutors a second bite at the apple: Mr. Taylor will also be placed in jeopardy for the exact same forcible rape and second-degree kidnapping offenses for which he was tried in 2011.

The same trial court that allowed Mr. Taylor to be tried and convicted for time-barred charges in 2011 (and summarily rejected in 2016 his post-conviction relief petition) has now rejected his constitutional challenges to his new prosecution, *see* Ex. 17, Ex. 18; the claims were presented to the Louisiana Fourth Circuit Court of Appeal and the Louisiana Supreme Court, which declined (without explanation) to exercise supervisory jurisdiction and intervene, *see* Ex. 19-22. Having exhausted state court avenues for relief,  Mr. Taylor now prays for the federal courts to enforce his constitutional rights.

**Jurisdiction and Venue**

---

   [2]   The federal courts and almost every other American jurisdiction reject this approach: a time-barred "lesser included" charge is simply time-barred. *See infra* footnote 17 and accompanying text (collecting authority).

1.      This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 2241(c)(3), 28 U.S.C. § 1651, and Article I, § 9 of the U.S. Constitution.

2.      Venue is proper in this judicial district under 28 U.S.C. 2241(d), because Petitioner Taylor is being detained in this district, and under 28 U.S.C. § 1391 because a substantial part of the events giving rise to his petition occurred in this district.

3.      *Younger* abstention does not apply to the species of constitutional claims brought here, insofar as the rights asserted "include[] not only the right to prevail in subsequent proceedings on constitutional grounds, but also the right to be free from the burdens of the subsequent trial itself." *Showery v. Samaniego*, 814 F.2d 200, 201 n.5 (5th Cir. 1987) (holding Double Jeopardy Claims may be asserted in § 2241 petition); *see also Davis v. Herring*, 800 F.2d 513, 516 (5th Cir. 1986) (same).[3]

---

[3]      Due Process Clause claims under *Blackledge* are identical to Double Jeopardy Clause claims in this regard. *See Blackledge*, 417 U.S. at 31 ("[I]n explaining why the Double Jeopardy Clause is distinctive, th[is] Court [has] noted that 'its practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial.' [*Robinson v. Neil*, 409 U.S. 505, 509 (1973)]. While our judgment today is not based upon the Double Jeopardy Clause, we think that the quoted language aptly describes the due process right upon which our judgment is based. The 'practical result' dictated by the Due Process Clause in this case is that [the state] simply could not permissibly require [the defendant] to answer to the felony charge."). *See also Class v. United States*, 138 S. Ct. 798, 803 (2018) (noting similarly between double jeopardy claims and *Blackledge* claims insofar as *Blackledge* claims also "implicate[] 'the very power of the State' to prosecute the defendant. *Blackledge,* 417 U.S. at 30. Accordingly, the [*Blackledge*] Court wrote that 'the right [the defendant] asserts and that we today accept is the right not to be haled into court at all upon the felony charge' since '[t]he very initiation of the proceedings' against [the defendant] 'operated to deprive him due process of law.' [*Blackledge*, 417 U.S. at 30–31]").

Even if this were a case where the basic factors counseling for *Younger* abstention did apply as an initial matter, Mr. Taylor's § 2241 petition implicates several long-recognized exceptions to the doctrine. The gravamen of Mr. Taylor's complaint is that the prosecution has been instituted in bad faith, *see Wilson v. Thompson*, 593 F.2d 1375 (5th Cir. 1979), *Shaw v. Garrison*, 467 F.2d 113 (5th Cir. 1972); and further that there are "other unusual circumstance[s] that would call for equitable relief." *Younger v. Harris*, 401 U.S. 37, 54 (1971). The decision of Louisiana's appellate courts to decline to exercise supervisory jurisdiction additionally means

4

**Parties**

4.      Petitioner Troy Taylor is a pretrial detainee in the custody of Respondent Sheriff

Marlin Gusman. He is currently detained at the Orleans Justice Center, 2800 Perdido Street, New

Orleans, LA 70119, under Orleans Parish Sheriff's Office folder number 2453611. He has

applied for relief from the trial court and applied for supervisory writs from the Louisiana Fourth

Circuit Court of Appeals and the Louisiana Supreme Court. All writs were summarily denied,

exhausting all of Taylor's state remedies.

5.      Respondent Marlin Gusman is the Sheriff of Orleans Parish and holds Mr. Taylor

in his custody at the Orleans Justice Center.

**Factual and Procedural Summary**

A.      *The Original (1994) Allegations*

6.      In 1994, S.B. reported to police that late one night, she hitch-hiked home after a

long night partying at a New Orleans nightclub. Ex. 2 (complete trial testimony from 2011) at

132:11-132:20. S.B. said she solicited a ride from a friendly shirtless man outside the club; she

reported that she and the shirtless driver subsequently had non-consensual oral and vaginal

intercourse in the back seat of his car. *See* Ex. 2; Ex. 15 at 15 (initial police report from 1994).

Afterwards she got out and climbed back in the front seat. Ex. 2 at 141:8-141:22.

7.      S.B.'s account has changed over the years in numerous ways, but her story has

been consistent in several important regards. In both 1994 and at trial in 2011, S.B. stated that

the alleged assailant *never* made any verbal threats[4]; *never* made threats of "great and immediate

---

Mr. Taylor lacks an adequate state forum in which he can receive timely enforcement of his
constitutional rights. *See Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975).

[4]      In the 1994 police report, S.B. stated that the alleged perpetrator "DID NOT SAY
ANYTHING" during the encounter. During her 2011 trial testimony, she stated that he spoke
kindly to her before saying "shut up" and told her to climb to the backseat, but otherwise did not

bodily harm"; *never* had the "apparent power of execution" of said threats; *never* used physical force with respect to vaginal intercourse; and *never* overcame her resistance by force. Nor was there any evidence that S.B. ever stated "no," "stop," "don't," or otherwise verbally communicated non-consent during the encounter. *See* Ex. 2; Ex. 15 at 15-16.

> **B.**   ***Aggravated Charges Rejected and Time-Barred Charges Selected***

8.   Presumably because S.B. did not allege (and has never alleged) that Mr. Taylor committed "aggravated rape" or "aggravated kidnapping," *see* La. R.S. 14:42 *and* La. R.S. 14:44, the Orleans Parish District Attorney's office in 2011 charged Mr. Taylor with "forcible rape" (La. R.S. 14:42.1) and "second-degree kidnapping" (La. R.S. 14:44.1).[5] *See* Ex. 1.

9.   The lead prosecutor who tried Mr. Taylor in 2011 was Assistant District Attorney Payel Patel. *See* Ex. 2; Ex. 4.

11.   The alleged wrongdoing occurred seventeen years earlier in 1994, but both of the charges prosecuted by Ms. Patel in 2011 had a six-year statute-of-limitations period.

12.   Mr. Taylor's trial attorney in 2011 filed a pre-trial "motion to quash" the second-degree kidnapping charge on statute-of-limitation grounds, but failed to do the same with respect to the forcible rape charge. The trial court erroneously agreed with prosecutors that the charges were timely instituted.

> **C.**   ***The 2011 Trial***

---

say anything remotely resembling a threat. *See* Ex. 2; Ex. 15 at 15-16.

[5]   Both "forcible rape" and "second-degree kidnapping" carried maximum possible sentences of forty years, with "good time" release available after twenty years based on 1994 sentencing law. Prosecutors rejected aggravated charges in 1994, which would have carried a mandatory sentence of life imprisonment.

13.     Mr. Taylor's trial counsel in 2011 failed him in numerous other ways, too—including waiving opening statement, opting not to ask S.B. a single question on cross-examination, and failing to highlight any of the evidence suggesting a consensual encounter.

14.     He also failed to take any action when both S.B. and another state's witness provided false testimony with respect to their criminal histories. Prosecutor Payel Patel appeared to have recognized that her witnesses provided false testimony—she went on the record, as jurors deliberated, to ensure the record reflected that she had provided RAP sheets to defense counsel—but opted not to inform jurors or the trial court before jurors returned with a guilty verdict. *See* Ex. 4; Ex. 23.

16.     To prove absence of consent, prosecutors introduced the testimony of the State's medical expert, Dr. David Benado. He opined that a hematoma observed in S.B.'s mouth after the incident was indicative of rape, as opposed to a consensual encounter, because it was unlikely to be generated by a sex act in a "loving relationship." Ex. 3.

17.     Without effective defense counsel, Mr. Taylor was convicted of forcible rape and second-degree kidnapping (although the jury was split 10-2 on whether to convict Mr. Taylor of second-degree kidnapping).

D.      *Mr. Taylor Successfully Appeals his Convictions, 2013-2017*

18.     On direct appeal, in 2013, the Louisiana Fourth Circuit Court of Appeal overturned Mr. Taylor's second-degree kidnapping conviction. The appellate court held the trial court abused its discretion in denying his motion to quash the kidnapping charge on statute-of-limitations grounds. *State v. Troy Taylor*, 118 So.3d 65 (La. App. 4 Cir. 6/23/13). Mr. Taylor expressly raised on direct appeal that the forcible rape charge was also time-barred, a claim the Fourth Circuit indicated was likely meritorious, but the appellate court declined to grant relief at

that time (because Mr. Taylor's lawyer had not presented a motion to quash the forcible rape charge to the trial court). *Id.* at 92-94.

19.     The Louisiana Supreme Court summarily denied Mr. Taylor's application for a writ to review the denial of his appeal in 2014. 125 So.3d 1169 (La. 2014).

20.     Mr. Taylor filed a petition for post-conviction relief in state court, and by operation of state law, the petition was heard by the same trial judge who erroneously denied his first motion to quash. The trial court erroneously denied Mr. Taylor's post-conviction relief petition in 2016. *See* Ex. 24.

21.     On April 6, 2017, the Louisiana Fourth Circuit Court of Appeal exercised its supervisory jurisdiction to review the denial of Mr. Taylor's post-conviction relief petition and vacated his forcible rape conviction. *State v. Taylor*, 2017 WL 1282124, No. 2016-K-1252 (La. App. 4 Cir. 4/6/17). The appellate court held that the rape charge, just like the kidnapping charge, was "time-barred." *Id.* The court went on to explain that, under *Stogner v. California*, 539 U.S. 607 (2003), Ms. Patel's use of a state statute purporting to "revive Mr. Taylor's time-barred prosecution for forcible rape violates constitutional ex post facto principles," *id.*, and that Mr. Taylor's trial counsel provided ineffective assistance of counsel by being ignorant of "well-established precedent, as set forth by the United States Supreme Court in *Stogner*, and the Louisiana Supreme Court" on this point. *Id.*

22.     Accordingly, the court vacated Mr. Taylor's forcible rape conviction. Notably, the appellate court did not remand for any further proceedings; Mr. Taylor's case had run its course. *Id.*

23.     The Louisiana Supreme Court affirmed on June 16, 2017. 223 So.3d 720 (La. 2017).

E. *Upping the Ante: Aggravated Charges (and Confusion) in 2017-2019*

24.       On July 14, 2017, after almost seven years of being unconstitutionally charged

and held, Mr. Taylor returned to the same division of Orleans Parish Criminal District Court,

Section "I", where he was initially tried. But instead of reuniting with his waiting family, the

prosecutor assigned to Section "I" that morning announced that he had learned from Ms. Patel

that Mr. Taylor "ha[d] been indicted on one count of first degree rape" [*sic*]. *See* Hr'g Tr. (July

14, 2017) 4:5-4:7. Without reviewing the bill of indictment, the trial court ordered Mr. Taylor

held on unspecified bail. Prosecutors said nothing about any kidnapping count. *Id.*

25.       But, in fact, no indictment—for either a rape or a kidnapping charge—had been

filed by Ms. Patel on July 14, 2017. When Mr. Taylor's defense team realized on July 17, 2017

that Mr. Taylor had *not* been formally recharged, attorneys rushed to the courthouse with a state

habeas petition that was filed that day. Ex. 24.

26.       Before the habeas petition could be ruled upon, prosecutors returned an

indictment in open court on July 18, 2017. *See* Ex. 5. This indictment accused Mr. Taylor of

"aggravated rape" and "second-degree kidnapping" (i.e., the very same kidnapping offense that

the Louisiana Fourth Circuit Court of Appeal ruled was time-barred in 2013). *Id.*

27.       There has been persistent confusion as to whether Mr. Taylor is now charged with

"aggravated kidnapping" or "second-degree kidnapping" in the post-2017 proceedings, and Mr.

Taylor was not arraigned between 2017 and 2019. A third, unsigned charging instrument

alleging "aggravated kidnapping" appeared in the court file by late 2017, *see* Ex. 6, and between

2017-2019, and prosecutors have made conflicting representations as to whether Ex. 5 or Ex. 6

was the operative charging instrument.[6] On August 23, 2019, prosecutors provided evidence that the third charging instrument (Ex. 6) alleging aggravated kidnapping had, in fact, been returned in open court. Mr. Taylor was finally arraigned on both aggravated rape and aggravated kidnapping charges that day. *See* Ex. 24.

**F.   *Seeking to Ascertain the Factual Basis for the "Aggravated" Charges***

28.     On August 3, 2017, in response to a detailed motion for a bill of particulars filed by Mr. Taylor, *see* Ex. 7, Assistant District Attorney Payel Patel specified that the State was alleging that Mr. Taylor committed the crime of aggravated rape under La. R.S. 14:44(A)(1), a rape that occurs where "the victim resists the act to the utmost, but [her] resistance is overcome with force," *see* Ex. 10. This representation ran directly contrary to S.B.'s initial report in 1994, *see* Ex. 15 at 14-16; S.B.'s trial testimony in 2011 (when she indicated that she was not "resisting in any way" because she was scared, *see* Ex. 2 (140:27-28)), and Ms. Patel's own argument during the 2011 trial that S.B. "made the [right] choice to [not] resist," Trial Tr. (Aug. 24, 2011) at 231:24-26.

---

[6]     The court record contained no minute entry as to how or when this document (Ex. 6) arrived in the file, and there was initially no evidence that it had ever been returned in open court. To clarify matters, undersigned counsel filed another Motion for Bill of Particulars, *see* Ex. 8 (Dec. 14, 2018) ("For well over a year, Mr. Taylor has sought in vain to determine such basic information as what charge he is facing . . . "), and a motion for sanctions when prosecutors still refused to comply, *see* Ex. 9 (June 7, 2019) ("At nearly ever court setting for the past two years, Mr. Taylor has urged that pre-trial matters in his case be handled as expeditiously as possible. Notwithstanding his requests, the State continues to stall and delay."). In response, on July 2, 2019, prosecutors filed yet another Bill of Particulars stating—contrary to their position over the past two years—that the operative charging instrument was the one filed July 18, 2019 (Ex. 5), listing Mr. Taylor's charge as "second-degree kidnapping." *See* Ex. 12. Relying on the July 18, 2019 bill of particulars, Mr. Taylor promptly moved to dismiss the kidnapping charge as time-barred (just as he had done eight years earlier when he faced second-degree kidnapping charges the first time). *See* Ex. 24. Before the court could rule, the State announced (1) that the July 2, 2019 Bill of Particulars was erroneous; and (2) that the July 20, 2017 indictment (Ex. 6) alleging aggravated kidnapping controlled.

29.     The bill of particulars also inconsistently alleged that Mr. Taylor committed aggravated rape by violating La. R.S. 14:42(A)(2), which requires proof that the victim did *not* resist, but that the defendant made "threats of great and immediate bodily harm, accompanied by apparent power of execution," and aggravated kidnapping under La. R.S. 14:44(2). These allegations ran directly contrary to S.B.'s initial report in 1994, *see* Ex. 15 at 15 (police report from 1994 noting perpetrator "DID NOT SAY ANYTHING" during the encounter), and S.B.'s 2011 trial testimony, Ex. 2 at 130-145 (noting the only things Mr. Taylor said to S.B., apart from initial polite conversation, were "shut up" and "get in the back").

30.     The State's first bill of particulars did not contain any factual allegations. Ex. 10.

31.     The trial court was not satisfied with the first bill of particulars and ordered the State to furnish an additional bill of particulars specifying what *factual* allegations the State claimed constituted "aggravated" versions of the two charges. The State filed a "Supplemental Bill of Particulars" on January 3, 2017. Ex. 11. The document essentially recited the account S.B. provided in 1994 and 2011, finally confirming (after five long months of confusion) that prosecutors were not bringing the "aggravated" charges based on any newly discovered information. *Id.*

G.     ***Litigating the Blackledge Motion to Quash***

32.     Because it is unlawful to "up the ante" by filing more serious charges upon a defendant's successful appeal of a conviction, *see infra* "Grounds for Issuance of a Writ," Mr. Taylor promptly sought to quash the new charging instrument(s) pursuant to *Blackledge v. Perry*.

*See* Ex. 15. Despite repeated pleas to resolve the issue promptly, it took nearly two years for the trial court to rule.[7]

33.     On April 12, 2019, the trial court issued a "Judgment" on Mr. Taylor's "Motion to Quash under *Blackledge v. Perry*" and several other pending motions. *See* Ex. 17.

**H.     *Litigating the Double Jeopardy Motion to Quash***

34.     Mr. Taylor formally asked the trial court to dismiss the current prosecution on Double Jeopardy Clause grounds on October 16, 2018. Ex. 16.

35.     On December 14, 2018, prosecutors filed an Opposition to the motion, and Mr. Taylor filed a written reminder to the trial court that his Double Jeopardy motion remained pending.

36.     On April 12, 2019, the trial court stated it was unaware that a motion to quash had been filed on Double Jeopardy grounds.

37.     On June 7, 2019, the trial court denied the motion. Ex. 16.

**I.     *Seeking Review of the Denial of the* Blackledge *and Double Jeopardy Clause Motions to Dismiss.***

38.     Mr. Taylor filed an application for supervisory writs to the Fourth Circuit Court of Appeals to seek review of the rulings on May 8, 2019 (*Blackledge*) and June 21, 2019 (Double

---

[7]     Mr. Taylor formally asserted his right to a speedy trial under *Barker v. Wingo* in writing on April 17, 2018. He orally requested the trial court lift a stay and rule on his motion on June 29, 2018; objected to further delays on July 23, 2018 and August 20, 2018; requested the stay be lifted on October 2, 2018; attempted suicide on November 7, 2018; formally asserted his right to a speedy trial under *Barker v. Wingo* in writing on November 7, 2018; did the same orally on November 15, 2018; objected to yet another stay on February 1, 2019; and formally asserted his right to a speedy trial under *Barker v. Wingo* in writing on March 18, 2019. He has since filed several more written assertions of his right to a speedy trial. He has also complained of prosecution delays in other filings. *See* Ex. 8, Ex. 9.

Jeopardy).[8] The Fourth Circuit Court of Appeal summarily denied both writ applications on August 8, 2019 without providing reasons. Ex. 19, Ex. 20.

39.     Mr. Taylor timely sought review of those decisions from the Louisiana Supreme Court. The Louisiana Supreme Court summarily denied both writ applications on January 28, 2020 without providing reasons. Ex. 21, Ex. 22.

**J.      *Aggravated Charges Used as Bargaining Chips throughout 2019***

40.     On January 24, 2019, prosecutors extended a "get out of jail now" plea offer to Mr. Taylor, whereby the threat of mandatory-LWOP charges would be dropped if he pleaded guilty to a single (time-barred) count of forcible rape. Ex. 13. When Mr. Taylor declined the offer, prosecutors insisted that he remain incarcerated on a $2,000,000 bond that they know he cannot afford, citing the seriousness of the charged aggravated offenses. *See* Ex. 13, Ex. 24 (minute entry at July 20, 2017).

41.     On April 5, 2019—just six days before the trial court's ruling on the question of whether prosecutors acted vindictively in subjecting Mr. Taylor to two mandatory-LWOP offenses—prosecutors presented Mr. Taylor with a written ultimatum. If Mr. Taylor asked to be retried for forcible rape and second-degree kidnapping (i.e., if he agreed to waive his constitutional rights, forfeiting his *pro se* legal victories secured in 2013 and 2017) they would be willing to drop the "aggravated" charges. But if Mr. Taylor did not waive his constitutional

---

8     Under Louisiana law, a defendant may seek review of any trial court decision through an application for a "supervisory writ." Such applications provide the appellate courts an opportunity to review the lawfulness of the lower court's decision, but the "denial by [an appellate court] of a writ application seeking to invoke that court's supervisory jurisdiction neither 'blesses nor adopts the [trial court's] factual determination or expressions of law.'" *Leblanc v. 1555 Poydras Corp.*, 156 So. 3d 1222, 1226 (La. App. 4 Cir. 12/17/14) (quoting *McClendon v. State, Dept. of Transp. and Development,* 642 So.2d 157, 158 (La. 9/6/94)).

rights, he would face a steep punishment: prosecutors would move forward with putting him on trial for the two mandatory-LWOP crimes. Prosecutors did not explain why they had not made this "offer" at any point during the preceding 626 days. Ex. 14.

42.     Mr. Taylor is unaware of any defendant in Orleans Parish history who has received such an ultimatum (i.e., a demand that the defendant consent to trial on charges that, indisputably, are constitutionally prohibited. . . or face trail for mandatory-LWOP crimes).

### Grounds for Issuance of the Writ

Mr. Taylor's petition sets forth two independent reasons why his present prosecution and imprisonment are unconstitutional: the prosecution violates (1) the Due Process Clause under *Blackledge v. Perry*, and (2) the Double Jeopardy Clause. Federal courts consider these questions *de novo*, with no deference owed to any factual or legal finding of the state courts, when a pretrial detainee seeks relief under 28 U.S.C. § 2241. *See Martinez v. Caldwell*, 644 F.3d 238, 242 (5th Cir. 2011); *Christian v. Wellington*, 739 F.3d 294, 298 (6th Cir. 2014) (agreeing with the First, Fifth, Ninth, and Tenth Circuits on the issue).

**GROUND 1:**     **Under the Due Process Clause, the same prosecutor may not charge Mr. Taylor with *aggravated* versions of the same criminal offenses, based on the same set of factual allegations, after Mr. Taylor's successful appeal.**

Constitutional guarantees of due process limit prosecutorial discretion to re-indict a defendant on more serious charges for the same underlying conduct with the same evidence following a defendant's successful appeal. *Blackledge v. Perry,* 417 U.S. 21 (1974). Although this species of due process claim is generally referred to as a "prosecutorial vindictiveness" claim, no showing of actual malice (*i.e.*, subjective bad faith or actual retaliatory motive) is required. *See Blackledge*, 417 U.S. at 28 (granting relief while highlighting that there was "no evidence that the prosecutor in this case acted in bad faith or maliciously"). The basic concern animating this

14

constitutional rule is twofold: (1) allowing prosecutors to "up the ante" in response to a successful appeal deters meritorious appeals by the specific defendant involved, and (2) permitting such prosecutorial conduct risks having a general chilling effect on other litigants down the road. If Mr. Taylor or litigants like him knew the reward for asserting their constitutional rights would be to face mandatory life imprisonment for their "victory," systematic violations of those rights would become the norm.

Mr. Taylor has been incarcerated since 2010 based on charges that Louisiana appellate courts ruled (in 2013 and 2017) were constitutionally impermissible, *see State v. Taylor*, 16-1252 (La. App. 4 Cir. 4/3/17); now, after a six-year campaign to win his freedom, Mr. Taylor "could wind up serving life in prison for his legal victory." Ken Daley, *New Indictment Raises Stakes*, Times-Picayune, July 21, 2017. It is undisputed that—between the initial charging in 2011 and Mr. Taylor's re-indictment in 2017—there has been no new evidence uncovered, no change in office policy or personnel, no overlooked allegations discovered, no new witnesses, and no new communications with the complaining witness supporting the aggravated charges. But-for his appellate victory, Mr. Taylor would never have faced the threat of mandatory life imprisonment.

This section proceeds as follows. First, it sets forth the relevant law for *Blackledge* claims, with emphasis on the difference between actual and presumptive vindictiveness claims (both of which Mr. Taylor asserts). Second, it explains that applying *Blackledge* and its progeny to the facts here, the institution of aggravated charges after Mr. Taylor's successful appeal is unconstitutional.

I.     **Law: *Blackledge* Claims Prohibit "Upping the Ante" Following a Successful Appeal**

     A.     **"Presumptive" (Post-Appeal) Vindictiveness Claims and "Actual" (Pre-Trial or Post-Appeal) Vindictiveness Claims.**

"'Prosecutorial vindictiveness' is a term of art with a precise and limited meaning." *United States. v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987). The phrase refers to those situations "in which the government acts against a defendant in response to the defendant's prior exercise of constitutional or statutory rights." *Id. Blackledge* is best understood as a "prophylactic rule," one designed to ensure that defendants would feel at liberty to vigorously defend and vindicate their constitutional rights to appeal, regardless of prosecutors' subjective motivations. *See generally* WAYNE R. LAFAVE, ET AL., 4 CRIMINAL PROCEDURE § 13.7(c) (4th ed.) (discussing *Blackledge* doctrine). A defendant is entitled to "pursue his statutory right[s] . . . without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration." *Id.* This holds true even in circumstances where prosecutors did *not* actually retaliate against the defendant—in the sense of vindictively seeking to punish or deter him—for the exercise of his constitutional rights. *Id.* Over time, the courts have come to recognize two species of *Blackledge* claims: those involving the presumption of vindictiveness (i.e., no showing of actual vindictiveness is necessary), which can exist only in the post-appeal setting, and those involving actual vindictiveness (i.e., those based on evidence of an improper motive), which can exist in a pre-trial or post-appeal setting. *See Jordan v. Epps*, 756 F.3d 395 (5th Cir. 2014). As explained more fully below, Mr. Taylor's claims arise in the post-appeal setting, and he asserts both presumptive and actual vindictiveness claims.

The landmark case limiting prosecutorial discretion to indict a defendant on more serious charges after an appeal is *Blackledge v. Perry*, 417 U.S. 21 (1974). There, the Supreme Court first announced that a defendant's rights under the Due Process Clause were violated by the institution of felony charges after the defendant sought appellate review of his misdemeanor conviction, a practice the Court termed "prosecutorial vindictiveness." Importantly, the *Blackledge* Court

vacated the defendant's felony conviction while taking pains to highlight that "there [was], of course, **no evidence that the prosecutor in this case acted in bad faith or maliciously** in seeking a felony indictment against [the defendant]." 417 U.S. at 28 (emphasis added). Rather, an irrebuttable presumption of vindictiveness attached simply by virtue of prosecutors increasing the severity of a charge, after a trial and appeal, in a way that would not have occurred but-for the appeal. *Id.* Having first exercised their discretion to *not* bring a particular charge for specific criminal conduct, prosecutors' decision to select a more serious charge (for the same conduct and the same evidence) following a defendant's successful appeal raised the presumption of vindictiveness. *Id.* The courts will frequently refer to a classic *Blackledge* claim—one in which the prosecutor increases the severity of charges after the defendant's successful assertion of post-trial rights—as one of "presumptive vindictiveness," since in the post-trial setting at issue in *Blackledge* the Court did not require any evidence of bad faith or maliciousness on the part of the prosecutor.

There is an critical difference between a prosecutor's decision to increase the severity of charges *before* trial and a prosecutor's decision to increase the severity of charges *after* an appeal: the "presumption of vindictiveness" that automatically attaches in the latter setting will not attach on the same facts in the pre-trial setting. After *Blackledge*, the Court subsequently reiterated that *Blackledge* announced a "presumption of prosecutorial vindictiveness" in situations where (1) prosecutors obtained a conviction at trial, (2) that conviction was overturned on appeal, and (3) more serious charges were brought for the same offense based on the same evidence in a new indictment. *United States v. Goodwin*, 457 U.S. 368 (1982). But in *Goodwin,* the Supreme Court declined to extend *Blackledge* presumption-of-vindictiveness in a new setting: recharging *before* trial. There, the Court clarified that this same "presumption of prosecutorial vindictiveness" that

courts infer *after* appeal—based in significant part on our "the institutional bias inherent in the judicial system against the retrial of issues that have already been decided"—simply does not apply when a defendant is re-indicted on more serious charges prior to an initial trial. *Id.* ("This case involves presumptions. The question presented is whether the [*Blackledge*] presumption . . . should also be applied to a evaluate a prosecutor's pretrial response to a defendant's demand for a jury trial."). In so doing, however, the Court carefully distinguished the factual scenario presented in *pre-trial* vindictiveness claims (like those present in *Goodwin*) from *post-appeal* vindictiveness claims (like those presented in *Blackledge* and in Mr. Taylor's case):

> Both [*North Carolina v.*] *Pearce*[, 395 U.S. 711 (1969)] and *Blackledge* involved the defendant's exercise of a procedural right that caused a complete retrial after he had been once tried and convicted. The decisions in these cases reflect a recognition by the Court of the institutional bias inherent in the judicial system against the retrial of issues that have already been decided. The doctrines of stare decisis, res judicata, the law of the case, and double jeopardy all are based, at least in part, on that deep-seated bias. While none of these doctrines [operating independently from the prosecutorial vindictiveness doctrine] barred the retrials in *Pearce* and *Blackledge*, the same institutional pressure that supports them might also subconsciously motivate a vindictive prosecutorial or judicial response to a defendant's exercise of his right to obtain a retrial of a decided question.

*Goodwin*, 457 U.S. at 376–77. Rejecting the pre-trial vindictiveness claim at issue there, the *Goodwin* Court allowed prosecutors to proceed with an initial trial of the defendant. 457 U.S. at 384. In so doing, however, the *Goodwin* Court reaffirmed that "the *Blackledge* prophylactic rule" remained the approach applicable to re-indictment on more serious charges after an initial trial conviction and appeal that caused "a complete retrial." *Goodwin*, 457 U.S. at 376; *see also Hardwick v. Doolittle*, 558 F.2d 292, 301-02 (5th Cir. 1977) (explaining that when prosecutors increase the severity of a particular charge after the appeal "the prosecutor ha[s] already exercised his discretion to bring the [lesser] charge" in the first instance, and hence application of the controlling standard announced in *Blackledge* ("[t]he [mere] apprehension of vindictiveness"

standard) does not significantly impinge upon prosecutorial discretion). And importantly, even in the pre-trial setting, the *Goodwin* Court allowed that claims of "actual vindictiveness" could proceed upon evidence of an improper motive by prosecutors. *See also* LAFAVE, ET AL., CRIMINAL PROCEDURE § 13.7(c).

Thus, per the United States Supreme Court, defendants establish a "presumption of vindictiveness" when the same prosecutor increases the severity of a charge following appeal based on the same evidence (and, per *Blackledge*, this showing alone suffices to prevail on a due process claim so as not to deter meritorious appeals), or they can assert "actual vindictiveness" in either a pre-trial or post-trial setting.

Subsequent Fifth Circuit "vindictive prosecution" cases have reiterated the important distinction between pre-trial and post-appeal claims: that which creates a "presumption of vindictiveness" in the latter setting does not necessarily do the same in the former. In *Deloney v. Estelle*, the Fifth Circuit focused on the ways in which *Blackledge* claims that challenge the substitution of *aggravated* charges (for the same conduct) following a successful appeal implicated different considerations than those decisions to file *additional* charges (related to the same conduct) following a successful appeal. Prosecutors should have more leeway when dealing with the discretionary decision to file additional charges, the Fifth Circuit held, but when a prosecutor re-indicts the defendant on "more serious charges for the same offense . . . (illustrated by *Miracle* [*v. Estelle*, 592 F.2d 1269 (5th Cir. 1979)] and *Blackledge*) . . . the reasonable apprehension of vindictiveness is by itself sufficient to establish a due process violation." *Deloney v. Estelle*, 713 F.2d 1080, 1083 n.6 (5th Cir. 1983) (emphasis added); *accord Jordan v. Epps*, 756 F.3d 395, 408 (5th Cir. 2014).

19

*Deloney* also emphasized that when dealing with cases in which prosecutors increase the severity of the same exact offenses, based on the same factual information, following a defendant's appeal, the prophylactic rule of *Blackledge* establishes a presumption of vindictiveness **that is not rebuttable**. The Fifth Circuit explained that courts:

> differentiate between cases where the accused was reindicted and retried on *additional* charges stemming from criminal conduct not alleged in the original indictment, and those where a defendant had been reindicted or retried on more serious charges for the *same offense.* In the former circumstance, (illustrated by *Hardwick* and *Jackson*), the Court concluded that the establishment of a *prima facie* case of vindictiveness creates only a presumption of a due process violation, shifting the burden to the state to prove that the prosecutor's motive was in fact not vindictive. This is because the state's interest in having the freedom to initiate prosecution for distinct offenses is great. In the latter circumstance (illustrated by *Miracle* and *Blackledge*), on the other hand, the reasonable apprehension of vindictiveness is by itself sufficient to establish a due process violation. When a case involves only the prosecutor's right to reopen "a previously completed exercise of discretion," *Jackson, supra,* 585 F.2d at 144, there is no strong countervailing policy of allowing the prosecution freedom to exercise its discretion in charging of the crimes, simply because there were no such other crimes. *Miracle v. Estelle,* 592 F.2d at 1276. **Because [the defendant's] claim of vindictiveness rests on his assertion that the state had reindicted him on more serious charges for the same offense after he had successfully challenged his earlier conviction, not that the state levied additional charges against him arising out of the same conduct, a showing of vindictiveness would establish a *per se* due process violation. There would be no need to remand to the district court to allow the state to rebut his showing.**

713 F.2d 1080, 1083 n.6 (5th Cir. 1983) (emphasis added). As the Fifth Circuit explained in

*Jackson v. Walker*:

> In effect Blackledge sets up a *per se* rule for some situations. It lays down the principle that in some situations a due process violation can be established by a showing that defendants might have a reasonable apprehension of prosecutorial vindictiveness, without a showing that the prosecutor actually had a vindictive or retaliatory motive to deter appeals.
>
> There are at least two reasons for such a *per se* rule. First, it is difficult to prove in court the actual state of mind of a prosecutor during his exercise of discretion. **And second, reindictments that look vindictive, even though they are not, may still make future defendants so apprehensive about the vindictiveness of prosecutors that they will be deterred from appealing their convictions.**

585 F.2d 139, 143 (5th Cir. 1978) (emphasis added). *See also State v. Leger*, 92 So. 3d 975, 985

(La. App. 3 Cir. 2012) (when "the Government baldly escalates the original charge as in

*Blackledge* . . . Defendant's establishment of a prima facie case is irrebuttable, and the Defendant

is entitled to prevail based entirely upon this initial showing.")[9]

　　While a prosecutor's decision to increase the severity of charges in order to evade a statute

of limitations may not raise a "presumption of vindictiveness" before trial, it does raise a

"presumption of vindictiveness" when such a decision is made only after the defendant has

successfully litigated an appeal.[10] In a recent federal district court case, the court rejected the

argument that federal prosecutors could permissibly charge the defendant with aggravated charges

---

[9]　　A recent Fifth Circuit opinion examining the *Blackledge* doctrine came in *Jordan v. Epps*, and it reaffirms these basic categories (e.g., "actual" vs. "presumptive" vindictiveness) and rules. 756 F.3d 395, 406 (5th Cir. 2014) (noting "a defendant may (1) show actual vindictiveness, or (2) show sufficient facts to create a presumption of vindictiveness."). There, in a split decision, the majority rejected a habeas petitioner's "actual vindictiveness" claim where a prosecutor reinstituted the *original* charges that he faced in the first instance, before any trial, after the defendant successfully persuaded an appellate court to nullify his plea agreement. *Id.* at 408 ("In contrast to the prosecutor in *Blackledge*, [the prosecutor here] never attempted to charge [the defendant] with any crime other than the one that [prosecutor] had repeatedly charged him with over the proceeding [sic] three decades"). "Presumptive vindictiveness" claims exist in those situations like that presented in *Blackledge*, where, the Fifth Circuit expressly underscored, the Supreme Court announced that "a person convicted of an offense is entitled to pursue his statutory right [to appeal an adverse trial verdict] without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration." *Jordan*, 745 F.3d at 408 (quoting *Blackledge*, 417 U.S. at 28); *see also id.* at 411 ("[W]hen we evaluate a presumption of vindictiveness claim, we focus instead on a different and narrower question: Is there an increase in the charge between the initial indictment and the indictment following the exercise of a right?"). The petitioner's claim failed in *Jordan v. Epps* because (1) prosecutors merely reinstituted the original charges, and never "upped the ante," and (2) the petition had never been placed in jeopardy at trial, and so he was bringing a *Goodwin* claim rather than a *Blackledge* claim.

[10]　　To be clear, it is exceedingly rare for prosecutors to attempt to increase the severity of charges after an appeal to evade a statute of limitations, because the Double Jeopardy Clause ordinarily establishes an independent bar to this tactic. *See infra* "CLAIM #2." But it has been attempted at least one time before Mr. Taylor's prosecution. *See United States v. Korey*, 614 F.Supp.2d 573 (W.D.Pa. 2009).

in a post-trial setting where they claimed they made a previous "mistake" as to the applicable statute of limitations. *United States v. Korey*, 614 F.Supp.2d 573 (W.D.Pa. 2009). There, following a defendant's successful appeal, the charges that prosecutors originally brought were now barred by a statute of limitations. *Id.* at 577-82. Prosecutors reinstituted the original charges, but to get around the statute of limitations problem, the government also filed an aggravated (premeditated murder) charge, which had no statute of limitations. *Id.* at 582; *see also United States v. Korey*, No. 08-CR-0039, 2009 WL 1940381, *1 n.1 (W.D. Pa. June 30, 2009) (clarifying that government's basis for filing more serious charge was "to invoke the longer statute of limitations"). Federal prosecutors insisted that they were not acting to *punish* the defendant, but rather simply acting to ensure that the defendant was held accountable for a serious crime under some statute that was not time-barred. The court held that "[t]his explanation, even if true, does not help the government's case." *Id.* ("Charging a citizen . . . in order to manipulate the statute of limitations is not a 'legitimate, objective reason[ ] for its conduct.'").[11]

---

[11] In state court litigation, prosecutors repeatedly invoked three cases involving a *pre-trial* decision to increase the severity of charges in answering Mr. Taylor's *Blackledge* claim. But prosecutors neglected to inform the Louisiana courts that these opinions—on their own terms— were predicated on the critical difference between *pre-trial* decisions to increase the severity of charges (i.e., *Goodwin* claims) and *post-appeal* decisions to increase the severity of charges (i.e., *Blackledge* claims). The State has identified no cases, from any federal or state court, where a post-appeal decision to institute more serious charges because the statute of limitations barred the original charges was deemed a permissible non-vindictive rationale under *Blackledge*. No such case exists. *But see United States v. Korey*, No. 08-CR-0039, 2009 WL 1940381 (W.D. Pa. June 30, 2009) (holding the opposite). Here is what the courts actually said in those three cases:

- *Paradise v. CCI Warden*, 136 F.3d 331, 336 (2d Cir. 1998): "At a threshold level, the conduct [the defendant] offers as a predicate for the state's purported retaliation is his successful pretrial motion to dismiss [the initial charging instrument]. Based on the *Goodwin* Court's recognition of the contrasting institutional considerations confronting prosecutors in pretrial and post-trial settings, 457 U.S. at 381-82, this court has consistently adhered to the principle that the 'presumption of prosecutorial vindictiveness does not exist in a pretrial setting.'"
- *United States v. Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017) ("In presumption cases [rather than claims requiring 'objective evidencing showing actual vindictiveness'], the Supreme

The Fifth Circuit's most recent discussion of the *Blackledge* doctrine came in *United States v. Dvorin*, 817 F.3d 438 (5th Cir. 2016), *cert. denied*, 137 S.Ct. 140 (2016), which unlike many of the aforementioned cases, actually involved an increase in the severity of charges after a successful appeal. There, prosecutors increased the severity of a charge (by adding a forfeiture notice) to a superseding charging instrument after an appeal. *Id.* Because "[t]he government has not pointed to any objective event that would motivate prosecutors to add [the aggravated] count **aside from Dvorin's appeal** and the agreed remand," the presumption of vindictiveness sufficed to establish a due process violation. 817 F.3d at 456 (emphasis added).

---

Court has distinguished between pre-trial and post-trial settings. *Goodwin*, 457 U.S. at 381. In a pre-trial setting, 'the prosecutor's assessment of the proper extent of prosecution may not have crystallized,' so an increase in charges may be the result of additional information or further consideration of known information, rather than a vindictive motive. *Id.* The routine exercise of many pre-trial rights also weakens any inference of vindictiveness, *i.e.*, that a prosecutor would retaliate simply because a defendant sought a jury trial or pleaded an affirmative defense. *Id.* On the other hand, a post-trial increase in charges is unlikely to be based on new information, and thus it is 'much more likely to be improperly motivated than is a pretrial decision.' *Id.* **For this reason, a presumption of vindictiveness will 'automatically' arise whenever charges are increased post-trial,** but in the pre-trial context, a defendant must provide additional facts sufficient to show that 'all of the circumstances, when taken together, support a realistic likelihood of vindictiveness'" (citing *Meyer*, 810 F.2d at 1245-46) (emphasis added).

- *State v. Gardner*, 8 S.W.3d 66 (Mo. 1999). This case never even involved a formal pre-trial assertion of a statute of limitations; rather, there were "informal conversations before trial," followed by a prosecutor's decision to "upgrade" the offense. *Id.* at 70. Moreover, *Gardner* does not mention *Blackledge*, *Goodwin*, or the words "due process"; it's not altogether clear that the defendant was making a federal Due Process Clause claim at all. But subsequent Missouri cases (which do make explicit reference to the governing federal case law) have made clear that *Gardner* is limited to vindictive prosecution claims arising only in the pretrial context when the defendant has not formally asserted any rights. *See State v. Potts*, 181 S.W.3d 228 (Mo. App. 2005).

These cases stand for nothing more than the unremarkable proposition that "it thus appears unlikely that the *Blackledge* prophylactic rule has any application whatsoever in a pretrial setting. . . . [T]he situation is quite different in a case which is governed by *Goodwin* rather than *Blackledge*." LaFave, Criminal Procedure, § 13.7(c). In other words, it is unremarkable for a prosecutor (in a pretrial setting) to select new charges they believe are not time-barred; but when such new charges are selected only after a defendant has successfully appealed an initial conviction, the presumption attaches.

**B.    *A narrow carve-out to* Blackledge *claims where there no "previously completed exercise of discretion."***

There is one narrow caveat to the foregoing, but it is one that does not dictate a contrary result here. In cases where prosecutors did not actually exercise their prosecutorial discretion to *reject* the more serious charges when they instituted the initial charges, *Blackledge* may not bar the subsequent reinstitution of more serious offenses after an appeal. The *Blackledge* Court flagged one way this might permissibly happen: prosecutors could bring more severe charges "if the State had shown that it was impossible to proceed on the more serious charge at the outset [because, for example, after an initial assault trial] the assault victim died." 417 U.S. at 29, n.7. Lower courts have recognized, in addition to "prior legal impossibility," the "discovery of new evidence" as a justification that might defeat a *Blackledge* claim. *Bragan v. Poindexter*, 249 F.3d 476, 482 (6th Cir. 2001). And this exception makes sense: in such situations, it would be impossible to presume there had been "a previously completed exercise of discretion" to forego the more serious charges in the first instance, either because the victim was not yet dead or because prosecutors did not have actual knowledge that a particular more serious crime might have occurred. *See Deloney*, 713 F.2d at 1083, n.5 (noting absence of "strong countervailing policy" of allowing unbridled prosecutorial discretion where claim involves only "a previously completed exercise of discretion").

Most recently, the Fifth Circuit has clarified that a "mistake" with respect to an initial charging decision—one realized only after the defendant's successful appeal—simply does not rebut the presumption of vindictiveness in the post-appeal setting. *United States v. Dvorin*, 817 F.3d 438 (5th Cir. 2016). In *Dvorin*, federal prosecutors identified the following as "objective event[s]" occurring after the initial charging decision, events they claimed showed they were not acting "vindictively" against the defendant, to justify the addition of a new charge:

> (1) the [new] count was added by a prosecution team that was not involved in the original prosecution and appeal; (2) the prosecution did not seek a new indictment just to add [the additional count], but also clarified the charge and scheme and addressed issues [the defendant] raised in a motion to strike surplusage; (3) the new prosecutors added the [increased charge] because its omission in the prior indictment was an oversight that was contrary to office practice; (4) the government's decision to add the forfeiture notice was based in part on new analysis of [the victim's] records showing the monetary benefit [that the defendant] received from the check-kiting scheme; (5) the prosecutors [increased charges] to give them additional tools to make the victim whole; and (6) the government's overall conduct belies the notion that the forfeiture notice was included out of vindictiveness.

817 F.3d at 455. But these arguments were unavailing. As the Fifth Circuit explained, "[t]he government has not pointed to any objective event that would motivate prosecutors to add [the additional charge] *aside from [the defendant's] appeal* and the agreed remand. The government's primary argument was that the omission of the forfeiture count was a 'mistake' that was 'corrected' on remand." *Id.* at 456 (emphasis added). This, the court concluded, was simply not enough.[12]

The Fifth Circuit's recent language in *Dvorin* is consistent with other appellate courts' reasoned opinions that a simple "mistake" with respect to an original charging decision is not a justification that defeats a *Blackledge* claim (particularly not when the same prosecutor now pursues an aggravated version of the same charge on the same evidence). The federal courts have uniformly held that the type of "mistake" allegedly at issue in this case—a mistake as to whether prosecutors could constitutionally pursue the charges they initially determined to be the appropriate charges—does not suffice to defeat a *Blackledge* claim (be it a traditional "presumptive

---

[12]     There is unexplained dictum in a 43-year-old case, *Hardwick v. Doolittle*, 817 F.3d 438 (5th Cir. 1977) suggesting that some types of "mistake" or "oversight" might constitute evidence of a non-vindictive rationale that prosecutors could invoke with respect to a *Blackledge* claim. It was this language that the trial court based its opinion on, and that prosecutors have repeatedly invoked. But, critically, this language was *not* part of the Fifth Circuit's holding (unlike in *Dvorin*, where the rejection of "mistake" was necessary to the court's judgment), and accordingly, the court made no effort to explicate what sorts of "mistake" might be cognizable.

vindictiveness" claim or an "actual vindictiveness" claim). *See Bragan v. Poindexter*, 249 F.3d 476, 482 (6th Cir. 2001) ("We [have] offered two examples of acceptable explanations—governmental discovery of previously unknown evidence and previous legal impossibility[, but] [w]e [have] refused to consider the prosecutor's statement that she committed a mistake[.]") In those cases where the courts have allowed prosecutors to adduce evidence to rebut an initial showing of actual vindictiveness, there has **never** been a state or federal case wherein the rationale suggested by prosecutors here ("We would try him for the original offenses, but they're time-barred" or "We would try him for the original offenses, but legal setbacks have rendered that approach impracticable") was accepted in the post-appeal setting. To the contrary, the courts have uniformly rejected this exact argument. And for good reason: Whenever a defendant has prevailed in an appeal, there has always been some legal "mistake" made by prosecutors along the way, and these "mistakes" cannot be invoked to justify an increase in the severity of charges post-appeal without nullifying *Blackledge* itself.

A prosecution mistake regarding the application of basic constitutional principles to the facts of the case—one that leads to the defendant prevailing in an appeal that eviscerates the government's ability to secure a conviction on the original charges—was also expressly rejected in *United States v. LaDeau*, 734 F.3d 561 (6th Cir. 2013). In that case, cited favorably by both the Fifth Circuit majority and dissent in *Jordan v. Epps*, and by the District Attorney in briefing before the state trial court—the Sixth Circuit considered an argument identical to the one Mr. Taylor's prosecutors make here: the defendant's successful assertion of his constitutional rights (there, a Fourth Amendment motion to suppress physical evidence) "eviscerated" prosecutors' efforts to bring the charges originally selected (possession of child pornography) to trial. *Id.* at 569. Prosecutors had made a "mistake" about the admissibility of their key evidence when they

initially charged the case. *Id.* Then, after the defendant successfully asserted his rights, prosecutors obtained a superseding indictment alleging more serious conspiracy charges (which the government would be able to prove, despite the suppression ruling). *Id.* at 564. Prosecutors didn't want to *punish* the defendant for asserting his rights; they just wanted to ensure that a sex criminal was held to account. *Id.* The Sixth Circuit had little trouble concluding that *Blackledge* prohibited the new indictment—alleging more severe charges that prosecutors originally opted not to bring—following the suppression ruling, notwithstanding prosecutors' good-faith mistaken belief that its (now suppressed) physical evidence had been constitutionally obtained. The *LaDeau* court went even further by considering and rejecting the argument that prosecutors could defeat a *Blackledge* claim with "statements that a prosecutor 'committed a mistake'" in the initial charging decision. *Id.* at 572 (quoting *United States v. Bragen*, 249 F.3d 476, 482 (6th Cir. 2001)). The court carefully explained that a "mistake" revealed by a defendant's appeal simply is not the sort of justification that can defeat a *Blackledge* claim:

> Yet the government is mistaken . . . . [T]he only substantive occurrence between the two indictments was LaDeau's successful suppression motion. The government has never suggested that any other development altered its perception of the case during the thirteen months that it was pending[.] Second, the burden that LaDeau's successful suppression motion placed upon the government was significant. . . . [The defendant]'s motion to suppress was neither routine nor typical: he succeeded in suppressing crucial evidence and thereby eviscerated the government's possession case. As the government concedes, LaDeau's successful motion eliminated its ability to prosecute the charge alleged in the first indictment. Unlike in *Suarez,* the prosecution here was saddled with the prospect of restarting LaDeau's prosecution from scratch, and unlike in *Moon,* the prosecution could not do so simply by making minor adjustments to the language of the indictment and carrying on with the same substantive counts as before.

*United States v. LaDeau*, 734 F.3d 561, 569 (6th Cir. 2013).

In short, neither the trial court nor the State has identified any case (either state or federal) where a purported "mistake" akin to this one has been accepted as a legitimate excuse under *Blackledge* for the post-appeal institution of more serious charges.[13]

## II.   Application of Law to Mr. Taylor's *Blackledge* Claim

Mr. Taylor advances both actual and presumptive vindictiveness claims, and none of the prosecutors' arguments to the contrary have merit. Both claims should be granted.

### A.   Presumptive Vindictiveness

Mr. Taylor has established a presumptive vindictiveness claim, insofar as it is undisputed that the very same prosecutor who filed the initial charges "upped the ante" in his case, based on the exact same evidence, and she would not have done so but-for his successful appeal. *See Dvorin*, 817 F.3d at 455 (applying presumption of vindictiveness where (1) more severe charges were brought after an appeal; (2) the more severe charge was based on the same conduct; and (3) the prosecutors had a strong institutional bias against retrying the same issues as were litigated before the appeal). Because Mr. Taylor's successful appeal undid the work involved in obtaining his original conviction, prosecutors had a "considerable stake" in "maintaining the status quo." *Jordan*, 756 F.3d at 409 (defining "considerable stake" as a "desire on the part of prosecutors to *avoid* having to again go to trial"); *Blackledge*, 417 U.S. at 27-28 ("A prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial *de novo* in the Superior Court, since such an appeal will clearly require increased

---

[13]   To the extent that "mistake" is a permissible basis in some settings, there has certainly never been a case in which prosecutors' objectively unreasonable ignorance of governing United States Supreme Court precedent was accepted as a basis for a later increase in the severity of charges. The trial court concluded that prosecutors made an "objectively reasonable" mistake here in 2011, Ex. 17, notwithstanding Louisiana appellate courts' repeated holdings in 2013 and 2017 to the contrary that it was an "abuse of discretion" and "objectively unreasonable" to be unaware of *Stogner v. California*, 539 U.S. 607 (2003).

expenditures of prosecutorial resources before the defendant's conviction becomes final, and may

even result in a formerly convicted defendant's going free.")). Prosecutors have "'upp[ed] the

ante' by imposing, or subjecting the defendant to, the risk of harsher punishment" for the same

offense.[14] *Id.* at 409. Mr. Taylor now faces the risk of a dramatically more severe sentence—for

the exact same offenses, based on the same evidence—as a reward for winning his appeal.[15] And

finally, the State has stipulated that but-for Mr. Taylor's successfully "challenging results the

prosecutor previously sought and obtained," he never would have faced the more serious

charges. *Jordan*, 745 F.3d at 408-10. No more is needed to establish a presumptive

vindictiveness claim; the Constitution prohibits this (as even the Louisiana Supreme Court once

recognized in the specific context of forcible rape and aggravated rape). *State v. Washington*, 430

So.2d 641, 645 (La. 1983) (holding "the state could not have retried [the defendant] with the

same evidence on the greater charge of aggravated rape" after his successful appeal of a forcible

rape conviction) (citing *Blackledge v. Perry*, 417 U.S. 21 (1971)).

This combination of events "establish[es] a *per se* due process violation [and] there [is]

no need to remand to the district court to allow the state to rebut [such a] showing." *Deloney*, 713

F.2d at 1083, n.6; *accord Leger*, 92 So.3d at 986. In such circumstances, to ensure that other

---

[14]   The fact that prosecutors might not genuinely seek to convict Mr. Taylor of the *aggravated* offenses, and seek merely to use the aggravated charge indictment as a backdoor means of pursuing the original charges or to coerce Mr. Taylor into pleading guilty, is of no legal significance (apart from it being a candid admission of bad-faith prosecution). As the Fifth Circuit explained in *Miracle*, the "severity of an alleged offense [for *Blackledge* purposes] is not determined by the actual punishment imposed but by the *potential* punishment for the offense, viewed prospectively." *Miracle*, 582 F.2d at 1275. The fact that Mr. Taylor now faces two mandatory-LWOP charges would "hardly seem[] an empty threat (to other defendants)." *Id.* at 1276 (quoting *United States v. Jamison*, 505 F.2d 407, 415 (D.C. Cir. 1974)).

[15]   Based on Louisiana sentencing laws in effect at the time of the date of offense, Mr. Taylor would have been eligible for "good time" release after serving 50% of his original sentence. He has already served close to a decade in prison.

defendants are not dissuaded from pursuing their own meritorious appeals, "[t]he [mere] apprehension of vindictiveness . . . control[s]." *Hardwick*, 558 F.2d at 302. This is particularly important in a case like Mr. Taylor's where there has already been significant media coverage broadcasting to the community that defendants "could wind up serving life in prison for [their] legal victory." Ken Daley, *New Indictment Raises Stakes*, TIMES-PICAYUNE, July 21, 2017. Just as the Fifth Circuit noted in *Miracle*, "even though [the new prosecution of Mr. Taylor may] not [be vindictive]," the Due Process Clause nevertheless prohibits the new charges because " [it] may still make future defendants so apprehensive about the vindictiveness of prosecutors that they will be deterred from appealing their convictions." 592 F.2d at 1273. No sane defendant observing what has happened to Mr. Taylor over the past three years would feel safe asserting their own constitutional claims, no matter how meritorious.

Prosecutors' likely response—that they simply seek to see that Mr. Taylor is held responsible for wrongdoing, not to punish him for appealing—does not rebut the presumption of vindictiveness for at least three reasons. First, a desire to ensure that the defendant is punished exactly as he was *before* he undertook his meritorious appeal (despite the appellate court's ruling that the constitution forbids said punishment) is not a valid justification to defeat a "vindictiveness" claim, and no case suggests otherwise. The case law says just the opposite. In *LaDeau*, prosecutors did not want to *punish* or *deter* the defendant for filing a successful suppression motion; they just wanted to make sure that a known pedophile and trafficker in child pornography received *some* punishment after their initial case was "eviscerated." 734 F.3d at 569. But the Sixth Circuit had little trouble holding that this "ensuring accountability" rationale did not negate the presumption of vindictiveness. *Id.* Likewise in *Leger*, prosecutors did not want to deter the defendant from challenging an unlawful sentence; they just wanted to make sure that,

once he prevailed on appeal, the defendant received a sentence close to what all parties originally agreed upon in a plea bargain. *Leger*, 92 So.3d at 985. *Accord Korey*, No. 08-CR-0039, 2009 WL 1940381, *1 n.1. Applying these lessons to Mr. Taylor's case, even if prosecutors adduced evidence that their sole motivation was to ensure some accountability for Mr. Taylor after his appeal "eviscerated" their original case, the Due Process Clause would still prohibit their institution of more serious charges. *Cf. LaDeau*, 734 F.3d at 569.

Second, likely recognizing the foregoing, prosecutors have attempted to characterize what transpired in 2011 as a "mistake." But even if prosecutors proved that the decision not to bring aggravated charges in 2011 was a "mistake," this justification simply is *not* a valid basis under *Blackledge* for "upping the ante." *See, e.g., Korey*, No. 08-CR-0039, 2009 WL 1940381, *1 n.1 (rejecting desire to evade statute of limitations in the post-conviction setting as valid non-vindictive rationale). The Fifth Circuit just said as much in *Dvorin*. 817 F.3d at 455 (rejecting mistake and oversight argument, when prosecutors possessed all of the same evidence at the outset when they brought the initial charges). Just as prosecutors in *LaDeau* made a "mistake" in thinking their crucial evidence was constitutionally obtained (and appellate litigation eviscerated their ability to bring the original charges), prosecutors here claim they made a "mistake" in thinking the forcible rape and second-degree kidnapping charges were timely instituted. *LaDeau*, 734 F.3d at 569. But, as the *LaDeau* court explained, such a justification does not defeat a *Blackledge* claim. *Id.*; *see also Bragan*, 249 F.3d at 482 (rejecting "mistake" generally); *Leger*, 92 So.3d at 985 (rejecting desire to correct "mistake" with respect to original sentencing range as valid rationale).

Third, all of the foregoing is somewhat academic, because prosecutors have fought vehemently to *oppose* any kind of evidentiary hearing as to the reasons for their actions. To say

that a "mistake" was made in 2011 is simply begging the question; it does not answer *why* prosecutors exercised their discretion to forego the aggravated charges in 2011 (and to bring them after Mr. Taylor won his appeal in 2017). *Cf. Korey*, 614 F.Supp.2d at 577-82 (noting prosecutors' defense must fail where prosecutors fail to adduce evidence to rebut *Blackledge* claim). The only reasonable inference from the "objective evidence" in the record is that prosecutors rejected aggravated charges in 2011 for a simple reason that hardly counts as a "mistake": they knew the allegations didn't support them. This inference is supported by other objective evidence in the record. *See* Ex. 11, Ex. 13, Ex. 14.

### B.   Actual Vindictiveness

Mr. Taylor also alleges actual vindictiveness. On top of the foregoing, he points to: (1) prosecutors' January 2019 plea offer to drop the aggravated charges, allowing Mr. Taylor to leave jail immediately if he simply pleads guilty to the criminal offense (forcible rape) that they know is constitutionally barred, coupled with their insistence that he remain jailed on $2,000,000 bond if he declines the offer; (2) Ms. Patel's puzzling, and thus far unexplained, assertion in her 2017 bill of particulars that she obtained a grand jury indictment because S.B. resisted "to the utmost" but her resistance was overcome by force (when Ms. Patel previously told the 2011 jury the exact opposite); (3) the lack of support for either aggravated charge in prosecutors' subsequent bills of particulars, raising the strong inference that the aggravated charges were instituted in bad faith; (4) prosecutors' written offer to drop the aggravated charges if Mr. Taylor waived his right to be free from Ex Post Facto punishment and consent to trial on the time-barred charges, which further suggests that the purpose of the aggravated charges was to give prosecutors a "bargaining chip" to trade for Mr. Taylor's constitutional rights; (5) a pattern of previous misconduct by Ms. Patel targeting Mr. Taylor, including engaging in prosecutorial

misconduct by failing to inform jurors during the 2011 trial of Mr. Taylor that two prosecution witnesses testified falsely, *see* Ex. 23; (6) prosecutors' six-year campaign to prolong Mr. Taylor's detention, when any objectively reasonable lawyer should have recognized that United States Supreme Court precedent dictated that the 2011 charges were time-barred; and (7) the entire course of litigation over the past three years, during which time prosecutors have sought delay after delay, and refused even to clarify whether Mr. Taylor faced "aggravated" or "second-degree" kidnapping charges.

### III.   Conclusion

For the above reasons, the instant prosecution of Mr. Taylor for aggravated criminal charges—following his successful appeal of his conviction for non-aggravated versions of the same offenses—is contrary to the Due Process Clause. The State may not reward Mr. Taylor for his successful appeal with the threat that he may spend the rest of his life in prison.

**GROUND 2:       The prosecution of Mr. Taylor for aggravated charges, following his successful appeals of his conviction for non-aggravated versions of the same offenses, violates the Double Jeopardy Clause.**

### I.   Law: The Double Jeopardy Clause Prohibits Retrial When an Appellate Court Determines the Initial Charges Were Time-Barred.

In recent years, Louisiana courts have shown little regard for criminal defendants' federal Double Jeopardy rights, requiring federal intervention in the § 2241 context. *See Davenport v. Richardson*, No. 14-CV-1092, 2015 WL 9906262, at *1 (W.D. La. Apr. 29, 2015), *report and recommendation adopted*, No. 14-CV-1092, 2016 WL 285060 (W.D. La. Jan. 20, 2016); *see also* Andrew S. Durham, *State v. Davenport: The Louisiana Supreme Court Ignores Federal Constitutional Double Jeopardy Protections in Favor of Criminal Reprosecution*, 89 TUL. L. REV. 909 (2015).

When a defendant prevails in a criminal appeal, the question whether the Double Jeopardy Clause prohibits retrial depends on the type of error that led to the conviction being vacated. When an initial trial was marred by some form of correctable trial error (i.e., an incorrect evidentiary ruling, an incorrect jury instruction, etc.), the "continuing jeopardy" exception to the double jeopardy rule allows for a second trial wherein the error can be "correct[ed]." *Burks v. United States*, 437 U.S. 1, 15 (1978). Hence, if there was an incorrect jury instruction, jeopardy from the first trial "continues" and the State may attempt to retry the defendant with the jury instruction corrected. *Forman v. United States*, 361 U.S. 416 (1960).

But the State is not afforded a second bite at the apple in other situations, such as when the evidence presented at the first trial was insufficient to support a conviction, *Burks*, 437 U.S. at 3, **and when the initial charges are time-barred**, *United States v. Oppenheimer*, 242 U.S. 85 (1916) (Holmes, J.). The State is not permitted to retry the defendant after an appellate ruling that the charges are time-barred, because at that moment jeopardy terminates, and there is no "trial error" to correct. The criminal proceedings against the accused have "run their full course." *Price v. Georgia*, 398 U.S. 323, 326 (1970).

The governing United States Supreme Court precedent is unambiguous and squarely on-point regarding the central question: whether an appellate court's finding that the statute of limitations bars an offense is equivalent to a reversal on the grounds of insufficient evidence, or (alternatively) is the equivalent of a reversal based on some form of "trial error." In *United States v. Oppenheimer*, the defendant was indicted for conspiracy to conceal assets from a trustee. 242 U.S. at 85. The defendant was previously indicted for the same offense under an indictment that was quashed because the one-year statute of limitations on that charge had run. *Id.* The

34

defendant's motion to quash the latter indictment was granted by the trial court, and prosecutors

appealed to the U.S. Supreme Court. The Court affirmed:

> It cannot be that a judgment of acquittal on the ground of the statute of limitations is less a protection against a second trial than a judgment upon the ground of innocence, or that such a judgment is any more effective when entered after a verdict than if entered by the government's consent before a jury is empaneled; or that it is conclusive if entered upon the general issue (United States v. Kissel, 218 U. S. 601, 610), but if upon a special plea of the statute, permits the defendant to be prosecuted again. . . .
>
> **[A] judgment for the defendant upon the ground that the prosecution is barred goes to his liability as matter of substantive law, and one judgment that he is free as matter of substantive law is as good as another. A plea of the statute of limitations is a plea to the merits** (United States v. Barber, 219 U. S. 72, 78, 55 L. ed. 99, 101, 31 Sup. Ct. Rep. 209), and however the issue was raised in the former case, after judgment upon it, it could not be reopened in a later prosecution. We may adopt in its application to this case the statement of a judge of great experience in the criminal law: 'Where a criminal charge has been adjudicated upon by a court having jurisdiction to hear and determine it, the adjudication, whether it takes the form of an acquittal or conviction, is final as to the matter so adjudicated upon, and may be pleaded in bar to any subsequent prosecution for the same offense. . .'

*Id.* at 87–88 (emphasis added). Notably, the Court reached this conclusion despite the fact that

the defendant was never even put in "jeopardy" (via trial) in the first case. *Accord State v. Latil*,

92 So.2d 63, 64 (La. 1956) ("So much is this so that a valid prescriptive plea has the effect of not

only protecting the accused against conviction and punishment, but also of relieving him of ever

being tried for the same offense.").

## II. Application of Law to Facts: The Appellate Courts Twice Ruled Mr. Taylor's Original Charges Were Time-Barred

Mr. Taylor was placed in jeopardy for rape and kidnapping in 2011, and with respect to

both charges, the appellate courts *held*—i.e., it was logically necessary and essential to their

judgments—that the previous convictions were invalid because prosecutors instituted the charges

after the statute of limitations for the offense had run. In 2013, the Louisiana's Fourth Circuit

Court of Appeals vacated the kidnapping conviction, and held "that the district court clearly abused its discretion" when it denied Mr. Taylor's motion to dismiss the kidnapping charge because the six-year statute of limitations for that offense had run well before he was charged in 2011. *Taylor*, 118 So.3d at 85. In 2017, after four years of unnecessary delays, the same court held that the rape charge was "time-barred," and that Ms. Patel improperly attempted "to revive Taylor's time-barred prosecution for forcible rape" when she subjected him to jeopardy more than a decade after the six-year statute of limitations for that offense had run, too. *Taylor*, 2017 WL 1282124, at *7. In other words, the Louisiana appellate courts unambiguously held that both of Mr. Taylor's original convictions should be vacated because, in the court's words, they were "time-barred."[16]

Moreover, prosecutors' decision to recharge Mr. Taylor with aggravated versions of the same offenses implicates the Double Jeopardy Clause in a separate way, one that is unique to Louisiana and that compounds the perniciousness of the constitutional violation. The Louisiana Code of Criminal Procedure contains an unusual provision, La. C. Cr. P. art. 574, that purports to

---

[16]   After concluding Mr. Taylor's rape charge was "time-barred," the appellate court in 2017 went on to conclude (1) that any attempt to "revive" the charge violated the Ex Post Facto Clause and (2) that Mr. Taylor was denied his Sixth Amendment rights when his trial counsel failed to file a motion to quash on statute-of-limitation grounds. It would be inappropriate to characterize this ruling as one of "trial error" that produces "continuing jeopardy." Had Mr. Taylor received constitutionally effective representation, the rape charge would have been dismissed with prejudice at the outset and no trial would have ever occurred; his case would have been over a decade ago, per *Oppenheimer*. Thus, the ineffective assistance of counsel at issue here is unlike ineffective assistance of counsel claims pertaining to trial errors, wherein a defendant is made whole by granting him a new trial with competent counsel. This is almost certainly why the appellate court vacated Mr. Taylor's conviction and did *not* remand for further proceedings; the court understood that its ruling (should have) meant the end of Mr. Taylor's ordeal. *See State v. Taylor*, 2017 WL 1282124, No. 2016-K-1252 (La. App. 4 Cir. 4/6/17). The ruling, the appellate court recognized, meant the prosecution had run its "full course." *See Price v. Georgia*, 398 U.S. 323, 326 (1970). It would be a cruel remedy if the "relief" given to Mr. Taylor actually made him worse off.

authorize the conviction and punishment of a defendant for a time-barred "lesser offense" when the defendant is acquitted of a more serious (and not time-barred) charge. This rule makes

Louisiana unlike every other jurisdiction in the United States (including the federal courts),[17]

save two. [18]

---

[17]   *See* 47 A.L.R.2d 887 ("The overwhelming weight of authority is to the effect that one cannot be convicted of a lesser offense includible within a larger crime, where prosecution for the latter was commenced after expiration of limitations applicable to the lesser offense. And the rule has been held applicable even though a statute expressly provides that upon indictment for the larger crime one may be convicted thereunder of certain lesser offenses included within it . . . The rule supported by the overwhelming majority of cases is that one cannot be convicted of a lesser offense upon a prosecution for a greater crime which includes the lesser offense, commenced after the statute has run on the lesser offense."). *See also United States v. Williams*, 684 F.2d 296 (4th Cir. 1982); *Waters v. United States*, 328 F.2d 739 (10th Cir. 1964); *Chaifetz v. United States*, 288 F.2d 133 (D.C. Cir. 1960); *Askins v. United* States, 251 F.2d 909 (D.C. Cir. 1958); *Letcher v. State*, 159 Ala. 59, 48 So. 805 (Ala. 1909); *Presnal v. State*, 129 So. 480 (Ala. App. 1930); *Spears v. State*, 160 So. 727 (Ala. App. 1935); *Padie v. State*, 557 P.2d 1138 (Alaska 1976); *People v. Beasley*, 105 Cal. App. 4th 1078 (Cal. Ct. App. 2003); *People v. Miller*, 12 Cal. 291, 1859 WL 1092 (Cal. 1859); *People v. Picetti*, 124 Cal. 361 (Cal. 1899); *Drott v. People*, 71 Colo. 383 (Colo. 1922); *Cane v. State*, 560 A.2d 1063 (Del. 1989); *Mitchell v. State*, 157 Fla. 121 (Fla. 1946); *Tucker v. State*, 417 So. 2d 1006 (Fla. 3d DCA 1982); *State v. Timoteo*, 952 P.2d 865 (Haw. 1997); *State v. Borucki*, 505 A.2d 89 (Me. 1986); *State v. Hicks*, 495 A.2d 765 (Me. 1985); *People v. Burns*, 647 N.W.2d 515 (Mich. App. 2002); *People v. Burt*, 16 N.W. 378 (Mich. 1883); *Heward v. State*, 21 Miss. 261, 1850 WL 2183 (Miss. 1850); *Riggs v. State*, 30 Miss. 635, 1856 WL 2566 (Miss. 1856); *State v. Chevlin*, 284 S.W.2d 563 (Mo. 1955); *State v. Atlas*, 75 Mont. 547 (Mont. 1926); *State v. Larson*, 783 P.2d 416 (Mont. 1989); *State v. Stillwell*, 418 A.2d 267 (N.J. App. Div. 1980); *People v. Crosby*, 531 N.Y.S.2d 753 (N.Y. Dist. Ct. 1988); *People v Dowling* 1 NY Crim 529 (N.Y. 1884); *People v. Lohnes,* 351 N.Y.S.2d 279 (N.Y. Sup Ct. 1973); *People v. Turner*, 806 N.Y.S.2d 154, (N.Y. 2005); *State v. Adams*, 45 N.E.3d 127 (Ohio 2015); *Osborn v. State*, 194 P.2d 176 (Okla. 1948); *Hickey v. State*, 174 S.W. 269 (Tenn. 1915); *State v. Bowling*, 10 Hum. 52, 1849 WL 2116 (Tenn. 1849); *Turley v. State*, 50 Tenn. 11, 1870 WL 2798 (Tenn. 1870); *Wilson v. State*, 15 Tenn. 516, 1835 WL 886 (Tenn. Ct. Err. & App. 1835); *Fuecher v. State*, 33 Tex. Crim. 22, (Tex. 1893); *Gallardo v. State*, 768 S.W.2d 875 (Tex. App. San Antonio 1989); *McKinney v. State*, 96 Tex. Crim. 342, 257 S.W. 258 (Tex. 1923); *State v. Yount*, 820 S.W.2d 252 (Tex. App. Beaumont 1991); *White v. State*, 4 Tex. App. 488, 1878 WL 9018 (Tex. Ct. App. 1878); *State v. Bedell*, 2012 UT App 171, 281 P.3d 271 (Utah Ct. App. 2012); *State v. Crank*, 105 Utah 332, 142 P.2d 178 (Utah 1943); *Taylor v. Commonwealth*, 64 Va. App. 282, 767 S.E.2d 721 (Va. 2015); *State v. Bingman*, 221 W. Va. 289, 654 S.E.2d 611 (W.Va. 2007); *State v King,* 84 SE2d 313 (W.Va. 1954); *State v. Stafford*, 89 W. Va. 301, 109 S.E. 326 (1921). *See also Cane v. State,* 560 A.2d 1063, 1064 n.3 (Del. 1989) (noting, incorrectly, that "Georgia apparently is the only state which permits conviction for a lesser offense under the indictment for the larger crime even though the time limitations statute has run on the lesser offense.").

[18]   Precisely to prevent the problem that has arisen here, Maine and Arkansas prohibit a conviction for a time-barred "lesser included offense" where evidence sufficient to result in a conviction for the greater charged offense is absent. *See* 17-A Me. R.S. § 8(7); *State v. Kotredes*, 2003 ME 142, 838 A.2d 331, 336 (examining sufficiency of evidence for greater charge); Ark.

As a result, Mr. Taylor faces not only (1) the prospect of being unconstitutionally tried for more serious versions of the same charges for which he was already placed in jeopardy in 2011, but also (2) the prospect of being unconstitutionally retried for the exact same charges that Louisiana courts have ruled are time-barred and, per *Oppenheimer*, are already resolved "on the merits." If and when Mr. Taylor is tried for aggravated rape and aggravated kidnapping in the coming weeks or months, he will automatically be placed in jeopardy (at the same time) for forcible rape and second-degree kidnapping by operation of La. C. Cr. P. art. 814. That provision dictates that in a trial for aggravated rape, the jury must be instructed that they can return a "responsive verdict" for forcible rape (and La. C. Cr. P. art. 574 provides that this will be a lawful verdict); in a trial for aggravated kidnapping, the jury must be instructed that they can return a "responsive verdict" for second-degree kidnapping (and La. C. Cr. P. art. 574 provides that this will be a lawful verdict). *See also* La. C. Cr. P. art. 803 (providing the court must instruct the jury on all Article 814 responsive verdicts); *State v. Ferguson*, 358 So.2d 1214 (La. 1978) (noting that charging the jury for all responsive verdicts under Article 814 is mandatory). *But see* La. C. Cr. P. art. 596 (providing "[d]ouble jeopardy exists in a second trial" if the second charge is "identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial").

---

Code § 5-1-109(d).  The two jurisdictions with laws akin to Louisiana's are Utah and Georgia. Utah Code § 76-1-305; *Manning v. State*, 182 S.E.2d 690 (Ga. Ct. App. 1971). Counsel is unaware of (1) any constitutional challenges to these laws, or (2) any suggestion that prosecutors in these jurisdictions have ever *intentionally* invoked these laws to circumvent that statute of limitations for a lesser charge.

This quirk of Louisiana law may explain why prosecutors have chosen the extraordinary path they have adopted here: Even if they fail to convince a jury that Mr. Taylor committed aggravated rape and aggravated kidnapping, they believe they have a backdoor to retrying Mr. Taylor for the same offenses for which *Oppenheimer* dictates they may not retry Mr. Taylor. But the Double Jeopardy Clause forbids this tactic. Even if this court were to find that Mr. Taylor could permissibly be placed in jeopardy for the *aggravated* version of the two time-barred charges—and, to be clear, Mr. Taylor urges that he is entitled to not be retried at all under *Oppenheimer*—this court should rule that his Double Jeopardy rights prohibit the State from seeking a conviction for "responsive" charges listed in Article 814 (i.e., the exact same forcible rape and second-degree kidnapping charges at issue in the 2011-2017 litigation).

**Prayer for Relief**

Petitioner prays that this Court order his release from Respondent Gusman's custody, insofar as his current pretrial detention offends the Due Process Clause and the Double Jeopardy Clause of the United States Constitution.

Respectfully submitted,

/s/ *Thomas W. Frampton*
Thomas W. Frampton, La. Bar No. 35775
*Counsel for Petitioner Troy Taylor*
Climenko Fellow & Lecturer on Law
Harvard Law School
106 Griswold Hall, 1525 Massachusetts Avenue
Cambridge, MA 02139
(202) 352-8341 (c)
(504) 821-5285 (f)
tframpton@law.harvard.edu
*Affiliation for Identification Only*

**Verification**

I declare under penalty of perjury that I am the petitioner, I have read the foregoing

petition or had it read to me, and the information in this petition is true and correct. I understand

that a false statement of a material fact may serve as the basis for prosecution for perjury.

Troy Taylor

Date: Feb. 7, 2020

**List of Exhibits**

Ex. 1 - Bill of Information I (January 13, 2011)
Ex. 2 – Trial Transcript (August 23, 2011) (complete testimony of S.B.)
Ex. 3 – Trial Transcript (August 23, 2011) (testimony of State's medical expert)
Ex. 4 – Trial Transcript (August 24, 2011) (Patel disclosure)
Ex. 5 – Bill of Indictment I (July 18, 2017)
Ex. 6 – Bill of Indictment II (July 20, 2017)
Ex. 7 – Motion for Bill of Particulars (July 24, 2017)
Ex. 8 – Motion for Bill of Particulars (December 14, 2018)
Ex. 9 – Motion for Contempt Sanction: State's Refusal to Respond to Bill of Particulars and
       *Brady* Motion  (June 7, 2019)
Ex. 10 – Bill of Particulars I (August 3, 2017)
Ex. 11 – Bill of Particulars II (January 3, 2018)
Ex. 12 – Bill of Particulars III (July 7, 2019)
Ex. 13 – Plea Offer (January 24, 2019)
Ex. 14 – State's Offer to Drop *Aggravated* Charges (April 5, 2019)
Ex. 15 – Motion to Quash Pursuant to *Blackledge v. Perry* and Its Progeny
Ex. 16 – Motion to Quash: Double Jeopardy Violation
Ex. 17 – Judgment (denying *Blackledge* claim) (April 11, 2019)
Ex. 18 – Judgment (denying Double Jeopardy claim) (June 7, 2019)
Ex. 19 – Louisiana Fourth Circuit Court of Appeal Writ Application Denial (*Blackledge*)
Ex. 20 – Louisiana Fourth Circuit Court of Appeal Writ Application Denial (Double Jeopardy)
Ex. 21 – Louisiana Supreme Court Writ Application Denial (*Blackledge*)
Ex. 22 – Louisiana Supreme Court Writ Application Denial (Double Jeopardy)
Ex. 23 – Motion to Quash: Prosecutorial Misconduct (September 20, 2019)
Ex. 24 – Docket Master